IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| TK HOLDINGS INC, *et al.*, | : | Case No. 17-11375-BLS |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |
| DINA GONZALEZ, | : | |
| | : | Civ. No. 23-738-RGA |
| Appellant, | : | |
| v. | : | |
| | : | |
| ERIC D. GREEN, in his capacity as trustee of the | : | |
| PSAN PI/WD Trust d/b/a the Takata Airbag Tort | : | |
| Compensation Trust Fund, *et al.*, | : | |
| | : | |
| Appellee. | : | |

## MEMORANDUM OPINION

This matter arises in the chapter 11 cases of TK Holdings, Inc. and its affiliated debtors (together, "Debtors" or "Takata"). *Pro se* appellant Dina Gonzalez, filed a proof of claim against the Debtors alleging injuries and loss of income sustained in a motor vehicle collision during which her vehicle's airbag system failed to deploy. Following an evidentiary hearing, the Bankruptcy Court issued an Order on October 20, 2020 expunging a subset of claims ("No Liability Claims") which included Appellant's claim (B.D.I. 4241)[1] (the "Expungement Order") for the reasons set forth in the accompanying opinion, *In re TK Holdings Inc.*, 2020 WL 6820751 (Bank. D .Del. Oct. 8. 2020) ("Opinion"). Two and a half years later, on March 14, 2023, Appellant filed a motion in the Bankruptcy Court seeking reconsideration of the Expungement Order (B.D.I. 4988) (the "Reconsideration Motion") pursuant to Federal Rule of Civil Procedure ("FRCP") 60(b) on the

---

[1] The docket of the chapter 11 cases, captioned *In re TK Holdings Inc., et al.,* Case No. 17-11375-BLS (Bankr. D. Del.), is cited herein as "B.D.I. ___."

grounds of newly discovered evidence that would affect the evidentiary basis upon which the Bankruptcy Court expunged her claim. The Motion for Reconsideration also sought relief from the Expungement Order pursuant to § 502(j) of the Bankruptcy Code. By order dated June 26, 2023 (B.D.I. 5039) ("Memorandum Order"), the Bankruptcy Court denied the Motion for Reconsideration. The appeal is fully briefed. (D.I. 16, 17, 18). For the reasons set forth below, the Memorandum Order is affirmed.

I. BACKGROUND

   A. The Debtors

The Debtors comprised a leading global developer and manufacturer of automotive safety and non-safety systems, including airbags and seat belts. The record reflects that, among other products, the Debtors manufactured airbag inflators containing phase-stabilized ammonium nitrate ("PSAN inflators"), which had the potential to rupture upon airbag deployment, causing death and serious injury to automobile occupants. The PSAN inflators were eventually the subject of the largest product recall in U.S. history. On June 25, 2017, each of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.

   B. The Plan and Trust

On February 21, 2018, the Bankruptcy Court confirmed a plan of reorganization (the "Plan"). (*See* Bankr. D.I.. 2116, 2120). The Plan became effective on April 10, 2018 (Bankr. D.I. 2646) (the "Effective Date"). The Plan divides personal injury and wrongful death claims ("PI/WD") claims related to Takata Products into two classes: (1) Class 5 PSAN PI/WD Claims for claims related to an injury or death allegedly caused by a PSAN inflator, and (2) Class 7 Other PI/WD Claims for claims, other than PSAN PI/WD Claims, arising out of or relating to an injury or death allegedly caused by a Takata product. Any unsecured claim other than a Class 5 PSAN PI/WD Claim or a Class 7 Other PI/WD Claim is classified as a Class 6 Other General Unsecured

Claim. Upon the Effective Date, the Takeda Airbag Tort Compensation Trust Fund ("TATCTF") was established, in relevant part, for the purpose of administering, resolving, liquidating, and satisfying the Class 5 PSAN PI/WD Claims, the Class 7 Other PI/WD Claims, as well as other claims described in Section 5.10 of the Plan. Eric D. Green was appointed Trustee of the TATCTF.

### C.   The Claim Objection

At issue in this appeal are the Trustee's Third, Eighth, and Ninth Omnibus Claim Objections (B.D.I. 3528, 3671, 3943) ("Claim Objections"). The Claim Objections sought to disallow 283 claims filed by parties alleging that they were injured as a result of an airbag's failure to deploy during an automobile accident ("No Liability Claims" or "Claimants"). Each of the Claimants asserted a claim of recovery against the TATCTF on the theory that injuries suffered by an airbag's failure to deploy—like those from a too-violent deployment—are the fault of products manufactured by the Debtors. The Trustee did not dispute, with respect to any of the claims at issue, that an airbag failed to deploy, or that the failed deployment caused injuries to the respective claimant. Rather, the Trustee argued that, even if an airbag failed to deploy during a vehicle accident that resulted in injury to a claimant, such an event could not be attributed to a component manufactured by the Debtors, and, therefore, the Debtors' estates had no liability for such claims. The Claim Objections sought to disallow the No Liability Claims in their entirety. Ms. Gonzalez, whose $100,000 claim was included among the No Liability Claims, filed two responses to the Claim Objection (B.D.I. 3599, 3976) ("Gonzalez Responses").

The Trustee based his argument on expert and fact witness testimony. First, the Trust retained the services of Harold R. Blomquist, Ph.D. ("Dr. Blomquist"), a chemist with 37 years of industrial research and development experience, to consult on scientific issues related to the Trust's administration of Class 7 Other PI/WD Claims. As set forth his Declaration (B.D.I. 3530) ("Blomquist Declaration"), Dr. Blomquist concluded that the deployment of an airbag is determined

3

by sensors located on various parts of a vehicle, along with an electronic control unit ("ECU") that processes data obtained from the sensors. Inflators themselves—the sort manufactured by the Debtors—are not responsible for the mechanism in a vehicle that determines if an airbag will deploy:

> The airbag system is comprised of a computer processor called the electronic control unit ("ECU") and the airbag module, which consists of a plastic cover, a folded airbag cushion, the housing, and the inflator. The process of deploying an airbag upon collision begins with crash sensors—small electronic components that detect changes in the velocity and direction of the automobile. Upon impact, these sensors measure how quickly a vehicle slows down in a frontal crash or accelerates to the side in a side-impact crash. The data collected by these sensors is sent to the ECU, which then assesses the severity and direction of the impact. The ECU uses software algorithms to determine whether or not airbag deployment is necessary, depending on variables such as the speed of the crash, the angle of the crash, and the position of the vehicle occupant.
>
> If the ECU determines that a deployment should occur, it then within milliseconds sends a signal (electrical current) to the inflator. Upon receiving the signal, the inflator converts the signal to a chemical combustion reaction, which generates a harmless gas that releases into the airbag, causing the airbag to fill with gas. In other words, the inflator is a chemical component that merely and irreversibly responds to the signal it is given from the ECU and has no role in the failure of an airbag to deploy.
>
> ***The manufacturer of the inflator or airbag module cannot be in any way responsible for failure to deploy events, since their components are not involved in determining whether a deployment should occur.***

(Blomquist Decl. at ¶¶ 7-9) (emphasis added). Dr. Blomquist's opinion was further substantiated by laboratory testing conducted by the Debtors and third-party investigators, as outlined in his supplemental declaration (Bankr. D.I. 3593) (the "Supplemental Blomquist Declaration," and, together with the Blomquist Declaration, the "Blomquist Declarations"):

> Takata has tested over 360,000 inflators and distributed parts to supporting laboratories. In these tests, whenever the inflators received a signal (electrical current), the inflators functioned (converting the signal to a chemical combustion reaction and causing the airbag to fill with gas). Even defective inflators responded to the signal, albeit too vigorously.

4

> These results provide further support for my determination that the inflator has no role in the failure of an airbag to deploy.

(Supplemental Blomquist Decl. at ¶ 3).

Second, Michael Rains, the Debtors' former CEO and current plan administrator of TK Global, with 25 years of experience with the company, averred that "none of the Debtors manufactured, sold, or were in any way involved with the design of [ECUs] or crash sensor components in the vehicles at issue in the No Liability Claims." (B.D.I. 3531 at ¶ 3).

The Bankruptcy Court held combined evidentiary hearings to consider the Claim Objections and Claims Objection Responses (1) on November 25, 2019, when the Trustee presented the expert testimony of Dr. Blomquist and when Dr. Blomquist was subjected to cross-examination (B.D.I. 4051) ("11/25/19 Tr."), and (2) on February 11, 2020, when the evidentiary hearing continued (B.D.I. 4087) ("2/11/2020 Tr."). In response to Dr. Blomquist's testimony, claimants offered the testimony of Dr. James F. DeBouno, who possesses a doctorate in environmental science and taught chemistry at several colleges and universities. The Bankruptcy Court noted that, while Dr. DeBouno's background "does not lend itself directly to providing expert testimony on the issues at the heart of the Claim Objections, the Court nevertheless afforded the parties and Dr. DeBouno broad latitude to offer testimony" at the evidentiary hearing. *In re TK Holdings*, 2020 WL 6820751, at *5. (*See* 2/11/2020 Hr'g Tr. at 23:7-33:6). Dr. DeBouno challenged Dr. Blomquist's findings on three substantive grounds: (1) that environmental conditions could cause degradation of the chemicals in a PSAN inflator (like those produced by the Debtors), which could cause airbags not to deploy (*id.* at 35:1-38:8); (2) that leakage in an airbag could cause non-deployment (*id.* at 40:22-21:11); and (3) the validity of the tests conducted by the Debtors and Debtors' prior admission to having produced defective PSAN inflators (11/25/19 Hr'g Tr. at 110:18-112:18).

With respect to the Dr. DeBouno's assertion that degradation of the chemical mixture in a PSAN inflator over time could cause non-deployment, Dr. Blomquist testified that laboratory

5

testing at four separate laboratories revealed no evidence of degradation. (*See* 11/25/2019 Tr. at 92:9-93:2; *see also* Blomquist Supplemental Declaration at ¶ 4). With respect to Dr. DeBouno's assertion that leakage in an airbag could cause non-deployment, the Bankruptcy Court noted, "Dr. Blomquist's testimony agreed that if an inflator had leakage, the leaks could affect the operation or potency of the PSAN chemicals, which could affect the deployment of the unit." *In re TK Holdings*, 2020 WL 6820751, at *9. Dr. Blomquist disagreed, however, "that leakage could cause nondeployment of an airbag because, in his view, such a defect in the housing of the chemicals would be found through rigorous testing and rejected at the factory." *Id.* Whereas each side "speculated and engaged in hypotheticals" on this point, the Bankruptcy Court found the leakage speculation unsubstantiated and held that that the related testimony had provided "no basis to assist the Court in making its determination." *Id.* Finally, with respect to Dr. Blomquist's testimony that even a defective airbag would always respond when it received a signal from the ECU, a fact which Dr. Blomquist testified had been substantiated by 360,000 tests conducted by Takata, Dr. DeBouno questioned the reliability and validity of those tests, based on the Takata's admitted past falsification and alteration of records and fraud. On cross-examination, Dr. Blomquist clarified that the falsified records submitted by the Debtors in connection with a Department of Justice criminal probe were unrelated to the 360,000 inflator tests that corroborate Dr. Blomquist's opinion that PSAN inflators have no role in the failure of an airbag to deploy. (*See* 11/25/19 Tr. at 89-90, 93).

Following the close of the combined evidentiary hearing, the Bankruptcy Court took the matter under advisement. On October 8, 2020, the Bankruptcy Court issued its Opinion. The Bankruptcy Court primarily relied on the Blomquist Declarations and Dr. Blomquist's expert testimony at the evidentiary hearings to find that "the preponderance of the evidence supports the Trustee's assertion that the Takata inflators did not cause the non-deployment of airbags." *In re TK Holdings Inc.*, 2020 WL 6820751, at *9. "Dr. Blomquist's expert testimony is credible, supported

6

by studies and his lengthy experience, and was not adequately rebutted by the Claimants' evidence." *Id.* Based on the Opinion, holding that the Trustee met his burden of proof and demonstrated, by a preponderance of the evidence, that the Takata inflators have no role in the failure of an airbag to deploy, the Expungement Order was issued on October 21, 2020 (B.D.I. 4241), disallowing the No Liability Claims, including Appellant's claim.

### D.     Subsequent Litigation

#### 1.     Dr. James F. DeBouno's Appeal

On October 29, 2020, Dr. DeBouno filed a notice of appeal from the Expungement Order. *See DeBouno v. Green (In re TK Holdings, Inc.),* Civ. No. 20-1480-RGA ("DeBouno Appeal"). Dr. DeBouno's arguments on appeal fell into two main categories: (1) the Debtors' or Trustee's "obstruction" by virtue of an alleged failure to produce certain data and information, and (2) the Bankruptcy Court's "biased review" by virtue of its failure to consider certain evidence submitted by Claimants and failure to recognize the contradictory nature of certain portions of Dr. Blomquist's testimony. The arguments were not supported in the record. On July 14, 2021, this Court issued a Memorandum Opinion holding that: (1) the Bankruptcy Court did not abuse its discretion in qualifying Dr. Blomquist as an expert witness and accepting his testimony; (2) the Bankruptcy Court did not err in concluding the Trustee carried his burden; and (3) Dr. DeBouno had asserted no clear error by the Bankruptcy Court. *See DeBouno v. Green (In re TK Holdings, Inc.),* 2021 WL 2949344, at *4-8 (D. Del. July 14, 2021).

#### 2.     Richard Shumate's Letter Requests and Motion for Relief

On May 18, 2022, claimant Mr. Shumate filed a letter with the Bankruptcy Court (B.D.I. 4705) ("First Shumate Letter") requesting a hearing with respect to his claims for injuries sustained in a collision when the airbag in his vehicle failed to deploy. In addition to his bankruptcy claim, which had been expunged by order of the Bankruptcy Court issued four years earlier (B.D.I. 2115),

7

Mr. Shumate's two related claims had been denied along with his subsequent appeals.[2] Mr. Shumate's letter referenced an expert and evidence which undermined Dr. Blomquist's declarations and testimony, which Mr. Shumate had presented in connection with his appeals. On June 29, 2022, the Bankruptcy Court held a status conference on the letter request, consistent with its practice of permitting claimants in these chapter 11 cases to appear and be heard regarding the claims process. (*See* B.D.I. 4746 at 7:16-14:3). After exploring at length any possible avenues of relief that may be available to Mr. Shumate (*see id.* at 15:22-23:3), the Bankruptcy Court scheduled a further status conference (*id.* at 35-36) and directed the parties to file letter briefs regarding the Bankruptcy Court's jurisdiction to grant any relief with respect to the claims. (*Id.* at 30-35). On July 21, 2022, the Trust filed its letter brief arguing that (1) the bankruptcy claim had been expunged four years earlier, and (2) Mr. Shumate's remaining claims against the IRF and TATCTF had been denied following the exhaustion of all applicable claim appeal procedures. (B.D.I. 4757). The Trust argued that the Bankruptcy Court did not have the power to review Mr. Shumate's IRF

---

[2] As explained below, Mr. Shumate's related claims were submitted to and denied by (1) the TATCTF (the "TD Claim") and (2) the Individual Restitution Fund (the "IRF Claim"), overseen by the U.S. District Court for the Eastern District of Michigan (the "Michigan District Court").

On February 27, 2017, the United States Department of Justice and Takata Corporation filed the Rule 11 Plea to resolve criminal charges brought by the government against Takata in connection with Takata's design, manufacturing, testing, sale and distribution of automobile airbag inflators. The Plea Agreement, which was accepted by the Michigan District Court, provides, *inter alia*, for the appointment of a Special Master to oversee the distribution of $975 million in restitution funds (the "Restitution Funds") that Takata agreed to pay to designated claimants. Contemporaneously with the acceptance of the Plea Agreement, the Michigan District Court entered the Restitution Order requiring Takata to, among other things, pay $125 million in restitution to individuals who suffered (or will suffer) personal injury caused by the malfunction of a Takata airbag inflator, and who have not already resolved their claims against Takata – i.e., resulting in a recovery from the IRF.

Shumate filed a claim for recovery from the IRF ("IRF Claim") which was denied by the Michigan District Court following review by the Special Master. The TATCTF treated the filing of Mr. Shumate's IRF Claim as a simultaneous filing of a TD Claim (*e.g.*, a Trust claim) and processed such claim through the TATCTF notwithstanding the fact that Mr. Shumate had no pending bankruptcy claim. Shumate's TD Claim was denied under the TATCTF's procedures, which do not compensate nondeployment claims.

and TATCTF claims, and that a ruling otherwise would "reopen th[e] carefully negotiated and approved Plan structure" and "would represent a fundamental shift from over four years of Plan treatment and Trust operation." (*Id.* at 1).

Before the Bankruptcy Court could rule on those issues, however, or hold the further status conference, on August 25, 2022, Mr. Shumate filed a motion for relief under FRCP 60(b) and Federal Rule of Bankruptcy Procedure ("FRBP") 9024, asking the Bankruptcy Court to reconsider and to vacate the order expunging his claim and to reinstate his bankruptcy claim. As grounds for relief, Mr. Shumate contended that he was unaware in 2018 that his claim had been objected to and expunged, and that his attorney had failed to keep him apprised of these developments. On September 26, 2022, the Bankruptcy Court issued a memorandum order denying the FRCP 60(b) motion and declining to reinstate the claim. (B.D.I. 4822). The Bankruptcy Court noted that Mr. Shumate had notice through his counsel, which had been served with both notice of the Claim Objection(s) and a copy of the Expungement Order, and that Mr. Shumate had otherwise failed to satisfy the standard for excusable neglect. Accordingly, the purported evidence cited in the First Shumate Letter was not addressed in the ruling.

On August 10, 2022, Mr. Shumate filed another letter with the Bankruptcy Court (B.D.I. 4783) ("Second Shumate Letter"), referencing new evidence discovered by John Keller, an engineer and former Takata employee, and arguing that it should be considered in connection with his claims by either the Bankruptcy Court or the Michigan District Court. According to the Second Shumate Letter, Mr. Keller had discovered a certain report which called into question Dr. Blomquist's declarations and testimony. The report, issued by Volkswagen ("Volkswagen Safety Report") with respect to Volkswagen's testing of Takata NADI airbag inflators in Audi vehicles, stated "that NADI inflators ... could potentially underinflate or not deploy at all due to moisture ingress." (*Id.* at 3). Because, in Mr. Keller's view, "NADI inflators and PSAN inflators have the exact same

9

components that would be subject to moisture ingress which would constitute a defect," Mr. Shumate argued that the Volkswagen Safety Report contradicted Dr. Blomquist. (*Id.* at 4).

On November 16, 2022, the Bankruptcy Court held another hearing, at which time Mr. Shumate argued that this new evidence had been improperly disregarded and seeking further proceedings with respect to his claims. (*See* B.D.I. 4899 at 29:21-39:4). The Bankruptcy Court reiterated its holding that his bankruptcy claim had been expunged years prior and that the excusable neglect standard was not met. (*See id.* at 40:21-41:9). As the authority conferred on the Bankruptcy Court by virtue of the Plan and Trust instruments did not extend to Mr. Shumate's other claims and had otherwise been exhausted, Mr. Shumate's request for any further proceedings before the Bankruptcy Court was denied. (*See id.* at 41:10-17).

Relevant to this appeal, Mr. Shumate then asked the Bankruptcy Court whether Appellant, Ms. Gonzalez, who was also in attendance at the hearing, might move for reconsideration of the order expunging her claim, based on the same new evidence found by Mr. Keller, and the Bankruptcy Court declined to give legal advice. (*See id.* at 43:1-44:7). Appellant raised the same question, and the Bankruptcy Court, again, declined to give legal advice. (*See id.* at 44:12-45:5).

### 3. Appellant's Reconsideration Motion

Two and a half years after the Bankruptcy Court entered the Expungement Order disallowing her claim, on March 14, 2023, Appellant filed the Reconsideration Motion "in lieu of newly-discovered evidence … pursuant to 11 U.S.C. § 502(j), Bankruptcy Rule 3[0]08 and Bankruptcy Rule 9024." (B.D.I. 4988 at 2). The Reconsideration Motion states that Appellant was "informed of newly discovered evidence before the status conference [on the Second Shumate Letter] held on November 16, 2022." (*Id.*) Appellant asserted that the Volkswagen Safety Report, which was "previously unknown to claimants," disputes Dr. Blomquist's declarations and testimony and demonstrates that "airbag inflator defects can cause failure to deploy events." (*Id.* at 2-3).

10

Appellant further argued, "Claimants should have been designated a court-appointed expert, or required to locate an expert equally knowledgeable to that of debtors, Dr. Blomquist, during the evidentiary hearing." (*Id.* at 9). Appellant asserted that the Bankruptcy Court's "opinion and [expungement] order . . . are no longer supported by evidence, and that testimony of the scientific issues involved in this case are of such nature that the better interests of justice would be served by presentation of such an expert witness as Mr. Keller." (*Id.* at 10-11).

The Trustee filed a preliminary response (B.D.I. 4993) highlighting what it viewed as procedural hurdles to the substantive relief Appellant sought in the Reconsideration Motion.[3] Consistent with the Bankruptcy Court's practice in these chapter 11 cases, on May 3, 2023, the Bankruptcy Court held a status conference on Appellant's Reconsideration Motion, to allow Appellant to be heard and determine the next appropriate steps. (B.D.I. 5055, 5092). Thereafter, the parties filed letter briefs in further support of their positions. (B.D.I. 5021, 5025). On June 26, 2023, the Bankruptcy Court entered the Memorandum Order denying the Reconsideration Motion. The Bankruptcy Court held that Appellant's request under FRCP 60 was untimely and that Appellant had failed to otherwise demonstrate excusable neglect.

On July 7, 2023, Appellant filed a notice of appeal (D.I. 1) with respect to the Memorandum Order. The appeal is fully briefed. (D.I. 16, 18, 21).

---

[3] The principal procedural issues raised by the Trustee's preliminary response concerned (1) Appellant's request for reconsideration of a purported "Bankruptcy Court Order dated July 14, 2021" which was not properly identified, and (2) law of the case from the Bankruptcy Court's prior denial of a motion for reconsideration. To the extent Appellant challenged this Court's July 14, 2021 Order affirming the Expungement Order in the DeBouno Appeal, the Trustee argued, the Bankruptcy Court lacked jurisdiction. To the extent Appellant sought reconsideration of the Expungement Order, the Trustee argued, the Bankruptcy Court had already denied a similar request for relief by Mr. Shumate (B.D.I. 4822), and that ruling was the law of the case.

11

## II.   JURISDICTION AND STANDARD OF REVIEW

The Court has appellate jurisdiction over all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). An order expunging a creditor's claim in an ongoing bankruptcy case is a final order. *In re Walsh Trucking Co.*, 838 F.2d 698, 701 (3d Cir. 1988). An order denying reconsideration is reviewed for abuse of discretion, although the underlying legal determinations are reviewed *de novo* and factual findings for clear error. *Snyder v. United States*, 404 Fed. App'x. 695, 697 (3d Cir. 2010). "An abuse of discretion exists where the [bankruptcy] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Decade, S.A.C., LLC*, 2020 WL 564903, at *4 (D. Del. Feb. 5, 2020) (quoting *In re Marvel Ent'mt. Grp., Inc.*, 140 F.3d 463, 470 (3d Cir. 1998)). A finding of fact is clearly erroneous "only if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Advance Cap. Partners, LLC v. Rossmann*, 495 F. App'x 235, 237 (3d Cir. 2012). Finally, "[Appellant] proceeds *pro se*, and accordingly, we construe [her] pleadings liberally." *See Laughlin v. Peck*, 552 Fed. App'x 188, 190 (3d Cir. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

## III.   DISCUSSION

### A.   Standards Applicable to Reconsideration

A bankruptcy court's authority to reconsider its previous order disallowing and expunging a claim is found in § 502(j) of the Bankruptcy Code and FRBP 3008. *See* 11 U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case"); Fed. R. Bankr. P. 3008 ("A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.").

12

Under FRCP 60(b), relief from a final order may be obtained under certain circumstances, including, as relevant here, "newly discovered evidence that, with reasonable diligence, could not have been discovered in time for a new trial under [FRCP] 59(b)." Fed. R. Civ. P. 60(b)(2). FRCP 60(c)(1) provides that a motion under FRCP 60(b) "must be made within a reasonable time—and for reasons (1), (2) [newly discovered evidence], and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Bankruptcy Rule 9024, which makes FRCP 60 applicable to cases under the Bankruptcy Code, establishes that time limits set forth in FRCP 60 do not apply to certain matters; as relevant here, "the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one-year limitation prescribed in [FRCP] 60(c)." Fed. R. Bankr. P. 9024.

Reconsideration is reserved for "extraordinary circumstances." *See, e.g., In re Energy Future Holdings Corp.*, 904 F.3d 298, 316 (3d Cir. 2018). It "should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court." *Jester v. State Dep't of Safety*, 2016 WL 4497055, *1 (D. Del. Aug. 26, 2016). Reconsideration "is not intended to present a litigant with a second bite at the apple." *Id.* The movant "bears a heavy burden" in showing that reconsideration is appropriate. *See, e.g., Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991).

### B. The Bankruptcy Court Did Not Abuse its Discretion in Denying the Reconsideration Motion

#### 1. The Reconsideration Motion Is Untimely Under FRCP 60

The Bankruptcy Court explained that FRCP 60 permits an application for relief to be made by motion, on the ground of newly discovered evidence, within one year after judgment. (Mem. Order at 2 (quoting Fed. R. Civ. P. 60(b)(2), 60(c)(1))). Appellant filed her Reconsideration Motion on May 2, 2023, more than 29 months after the October 20, 2020 date on which the Expungement Order was entered.

Although not addressed in the Memorandum Order, for purposes of FRCP 60, a movant's newly discovered evidence must be evidence that "with reasonable diligence, could not have been discovered in time to move for a new trial under FRCP 59(b)" – *i.e.*, that could not have been discovered within 28 days of the judgment or order. *See* Fed. R. Civ. P. 59(b), 60(b)(2), 60(c)(1). By the Reconsideration Motion, Appellant requested that the proceedings resulting in the disallowance of her claim (and other similarly situated claims) be reopened to allow Mr. Keller to present his opinion on evidence regarding the non-deployment of Takata airbags. (B.D.I. 4988 at 5). Appellant asserted, "As a result of the hearing in *Shumate vs. TK Holdings, Inc.*, held on November 16, 2022," she requested that Mr. Keller review her case. (*Id.*) Beyond the Appellant's solicitation of Mr. Keller's opinions as a result of the November 2022 hearing, Appellant's purported new evidence consists of (1) a September 2016 NHTSA report, (2) a June 2015 transcript (or report, the Reconsideration Motion is unclear) from a hearing before a U.S. Senate Committee on Commerce, Science, and Transportation, (3) data resulting from a November 2015 "Consent Order," and (4) alleged facts "presented but excluded" in connection with the Claim Objections. (*See* B.D.I. 4988 at 6-20). That the proposed expert opinion is based upon information available to Appellant before the trial on the Claim Objections and subsequent appeals, and within 28 days of the Expungement Order, further undermines any contention that the Bankruptcy Court abused its discretion in declining to grant reconsideration.

FRBP 9024 provides that FRCP 60 applies in bankruptcy cases but further provides that "a motion … for the reconsideration of an order allowing or disallowing a claim against the estate ***entered without a contest*** is not subject to the one-year limitation prescribed in [FRCP] 60(c)." Fed. R. Bankr. P. 9024. "Accordingly, a contested order allowing or disallowing a claim is subject to the one-year statute of limitation." 4 COLLIER ON BANKRUPTCY ¶ 502.11 (16th 2023). Here, the

Claim Objection(s) proceeding was a contested matter.[4] Appellant does not claim that she was without notice or an opportunity to be heard with respect to the Claim Objection(s), and the record on appeal is clear the Expungement Order followed evidentiary hearings, in which Appellant opposed the relief sought by the Claim Objections through the Gonzales Responses, and that claimants presented expert testimony from Dr. DeBouno. As the Expungement Order resulted from a contested matter, the one-year limit in FRCP 60(c)(1) applies.

Appellant argues, "FRCP 6(b) grants the court power to extend deadlines for good cause, on a motion made after the expiration of time when a party demonstrates excusable neglect." (D.I. 16 at 26). FRCP 6(b) generally governs when the court may, for good cause shown, grant an extension. However, the Rule specifically provides, "A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)." Fed. R. Civ. P. 6(b)(2).

Appellant further argues that, "Motions under Rule 60(b)(6) are not subject to this one-year constraint." (D.I. 16 at 26). FRCP 60(b)(6) provides that a movant may seek reconsideration "within a reasonable time" for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6), (c)(1). Even if Appellant could seek relief under both FRCP 60(b)(1) and (6),[5] the standard is not

---

[4] "Unless objected to, a claim which is the subject of a properly filed proofs of claim is deemed allowed," and no proceeding is initiated. *In re Chateaugay Corp.*, 104 B.R. 622, 624 (S.D.N.Y. 1989); Fed. R. Bankr. P. 7001, 9014. However, should the debtor file an objection to a claim, a contested matter is initiated. *In re CM Holdings*, 221 B.R. 715, 720 (D. Del. 1998) (citing *Chateaugay Corp.*, 104 B.R. at 624). "The filing of a proof of claim does not initiate either an adversary proceeding or a contested matter. Rather, when an objection to a proof of claim is filed, the objection initiates a contested matter." *Id.* (quoting *In re Fairchild*, 969 F.2d 866, 868 (10th Cir. 1992)).

[5] "The Supreme Court has held that clauses (1) through (5) of Rule 60(b) are mutually exclusive from clause (6)." *Cunningham v. Riley*, 2003 WL 21383723, *3 (D. Del. Jun. 12, 2003) (citing *Liljeberg v. Health Services Acq. Corp.*, 486 U.S. 847, 863 n.11 (1988)). As the Court explained:

> In *Klapprott v. United States*, 335 U.S. 601, 613 (1949), we held that a party may "not avail himself of the broad 'any other reason' clause of 60(b)" if his motion is based on grounds specified in clause (1)—"mistake,

15

met here. While the Court is sympathetic to any *pro se* individual attempting to navigate a complex chapter 11 proceeding without counsel, the timing of the Reconsideration Motion is not reasonable, and the grounds set forth here do not "justif[y] relief." Appellant—and many similarly situated claimants who failed to meet their burden in an extensively litigated matter—are not entitled to reopen evidentiary proceedings years later based on information available at the time of the trial or within 28 days of the judgment. To hold otherwise, and give claimants a "second bite at the apple," would impair important bankruptcy policies of prompt resolution of claims and finality. Simply put, there are no extraordinary circumstances justifying reconsideration of the Bankruptcy Court's determination that the Trust had carried its burden of proof by a preponderance of the evidence.

2.   **Application of the *Pioneer* Factors Weighs Against Excusable Neglect**

Pursuant to § 502(j) and FRBP 3008, the Bankruptcy Court has the power to reconsider allowed or disallowed claims "for cause" and according to "the equities of the case." As "cause" and "equities" under § 502(j) are not defined, "the bankruptcy court applies the same analysis it would to alter or amend a judgment under [FRBP] 9023 (incorporating [FRCP] 59), or to grant relief from a final judgment, order, or proceeding under [FRBP] 9024 (incorporating [FRCP] 60), depending on whether the movant sought reconsideration within fourteen days after the entry of the order disallowing the claim, or did so only later." *Residential Capital, LLC*, 2016 WL 796860, at *15 (S.D.N.Y. 2016); *see In re Genesis Health Ventures, Inc.*, 362 B.R. 657, 661 (D. Del.), *aff'd*,

---

inadvertence, surprise or excusable neglect." Rather, "extraordinary circumstances" are required to bring the motion within the "other reason" language and to prevent clause (6) from being used to circumvent the 1-year limitations period that applies to clause (1). This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive.

*Liljeberg*, 486 U.S. at 863 n.11. As Appellant's "reason for relief falls within those contemplated by clause [(2) newly discovered evidence], it would not be proper to allow relief under clause (6)." *Torockio v. Chamberlain Mfg. Co.*, 56 F.R.D. 82, 87 & n.11 (W.D. Pa. 1972), *aff'd*, 474 F.2d 1340 (3d Cir. 1973).

16

248 F. App'x 475 (3d Cir. 2007); *In re Motor Freight Exp.*, 91 B.R. 705, 711 (Bankr. E.D. Pa. 1988). Having considered all other grounds asserted by Appellant under FRCP 60(b), the Bankruptcy Court turned to excusable neglect under FRCP 60(b)(1) to determine whether there was cause to grant reconsideration. (*See* Mem. Order at 2-4).

The Supreme Court has identified four factors for determining excusable neglect: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). "All factors must be considered and balanced; no one factor trumps the others." *Hefta v. Official Comm. of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 133 (3d Cir. 2005).

With respect to the first factor, prejudice to the Debtor if the Reconsideration Motion is granted, the Bankruptcy Court found that the Trustee "has credibly demonstrated that the Trust will suffer legal prejudice if the Motion for Reconsideration goes forward." (Mem. Order at 3). The Bankruptcy Court further noted "a real prospect of harm to the holders of allowed claims in this proceeding, as the Trustee represents that the administration of this case is nearing its conclusion and the cost and delay of continued legal proceedings places at risk their expected and approved distributions." (*Id.*). Appellant argues that the Expungement Order should be "declared null and void" and evidence on the Claims Objections reopened. (D.I. 21 at 11). The Court agrees that granting relief, and re-opening evidence on the Claims Objections, would require the Trust to re-engage experts to respond, incurring costs and expenses in connection with a retrial of non-deployment issues that would dissipate assets and lessen the ultimate amount available for distribution to all Claimants.

Regarding the second factor—the length of the delay, and its potential impact on judicial proceedings—the Bankruptcy Court determined that the burden upon the Trust, resulting from the three-year delay in bringing the Reconsideration Motion, mandated its denial. (*See* Mem. Order at 3). Appellant argues that the delay factor of this analysis "should not be held to turn entirely on the urgency created by debtor's timeline" and that "what constitutes reasonable time necessarily depends on the facts in each individual case." (D.I. 21 at 8-9). But the Court is confident that any determination of a reasonable time period would not include the circumstances here. The Court agrees that reconsideration of the Expungement Order, two and a half years after it was issued, carries not just a "potential impact" on the chapter 11 proceedings; rather, it would almost certainly result in many similarly situated claimants seeking the same relief, *i.e.*, the submission of new evidence, leading to a lengthy delay of claims distributions and the ultimate conclusion of the chapter 11 cases, at the expense of creditors and other claimants.

Addressing the third factor—the reason for Appellant's delay, including whether it was within the reasonable control of the movant—the Bankruptcy Court found that this factor favors the Trustee because Appellant has ultimately failed to offer any reason why this evidence, which was available at the time of the trial, was not offered at trial. (Mem. Order at 3). Appellant asserts that the new evidence could not, in the exercise of reasonable diligence, have been discovered in time for use at trial. In support, however, she states, "It wasn't until Appellant was contacted in November of 2022 before Mr. Shumate's hearing that she was surprised to learn of the newly-discovered evidence." (D.I. 21 at 11 (also asserting that the Trustee's expert was not forthcoming to the court at trial)). The reasons given do not demonstrate a delay outside of Appellant's control.

Finally, with respect to whether the movant acted in good faith, the Bankruptcy Court made no finding, and the Trust took no position. This factor was therefore in equipoise. However,

balancing the three other factors, the Court finds no abuse of discretion in the Bankruptcy Court's conclusion that Appellant failed to demonstrate excusable neglect.

## IV.   CONCLUSION

Appellant points to no "clearly erroneous finding of fact," "errant conclusion of law," or "improper application of law to fact" in the Memorandum Order.  Rather, Appellant focuses on her efforts to understand and counter elements of the Claim Objection(s) and the interest of justice. While the Court does not doubt Appellant's good faith efforts to navigate the chapter 11 process on her own, Appellant had notice of the Claim Objection(s), chose to proceed *pro se,* and is not entitled to revisit long settled rulings on the grounds presented here.  While this Court is "not unmindful of the remedial nature of Rule 60(b)," *Torockio*, 56 F.R.D. at 87, there is no abuse of discretion here, where the request for reconsideration is untimely, based on evidence that could have been discovered years earlier with reasonable diligence, and where the standard for excusable neglect was not met.

An appropriate order follows.

Entered this 6th day of March, 2024.

_____
United States District Judge